IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KHALED ABU MOUNSHAR,     :
                            :       CIVIL ACTION
     v.                     :       NO.   15-4168
                            :
CITY OF PHILADELPHIA, et al.    :

O'NEILL, J.                                       July 26, 2016

## MEMORANDUM

Plaintiff Khaled Abu Mounshar has sued defendants the city of Philadelphia and police officer Robert Caban in conjunction with alleged violations of his constitutional and state law rights during a routine traffic stop.   Currently pending before me is defendants' motion for summary judgment.   For the following reasons, I will deny the motion.

## FACTUAL BACKGROUND

At approximately 7:45 p.m. on September 27, 2014, plaintiff and a friend were driving a 2002 Volkswagen Golf in the area of D and Whitaker Avenue in the city of Philadelphia.   Dkt. No. 16, Ex. B, Dep. of Khaled Abu Mounshar (Mounshar Dep.), 6:18–7:25, Feb. 18, 2016.   In the middle of Whitaker Avenue, defendant Caban and his partner Officer Antonio Smith stopped plaintiff's vehicle.   Id. at 8:2–7.   Caban approached the car and instructed plaintiff to give him his documentation.   Id. at 12:2–3.   Plaintiff handed over his license, registration and insurance, but Caban "threw the insurance right back" at him because it was not an accident scene.   Id. at 12:5–9.   Caban proceeded to ask plaintiff where he was going while Officer Smith yelled at plaintiff to take his hands off the gear and put the keys on top of the hood.   Id. at 12:10–22.   Although plaintiff did as he was told, Caban directed him to step out of the vehicle.   Caban

pushed plaintiff with some force against the car, patted plaintiff down, took his wallet out of his pocket and threw it to his partner who proceeded to search it.   Id. at 13:11–22.   After the pat down, Caban handed back plaintiff's wallet and explained that he pulled plaintiff over for running two stop signs.   Id. at 14:2–3, 16:3–4.   Over plaintiff's denial of any traffic violations, Caban returned to his vehicle for another fifteen to twenty minutes to check on plaintiff's identification.   Id. at 23:6–12.

When Caban came back to plaintiff's vehicle, he again requested plaintiff's license. Plaintiff insisted that he already gave it to the officer, prompting Caban to respond, "you didn't give me any f***ing license."   Id. at 23:13–24:6.   Upon Caban's request, Plaintiff provided his name, date of birth and social security number.   Caban took the information and left for another fifteen to twenty minutes.   Id. at 24:3–13.   When he returned, he stated, "I can't find your name on dispatch, and I can't find your name in our system.   Are you an immigrant?"   Id at 24:12–17. Plaintiff said he was not and re-offered his social security number, at which time Caban again ordered plaintiff out of the car.   Id. at 24:18–25.   Caban then pushed him against the car, patted him down, handcuffed him, put him in the back seat of the police car and stated that he was taking him back to the station.   Id. at 25:3–24.   While in the back seat, plaintiff requested that the handcuffs be loosened, which request was ignored.   Id. at 26:4–15.

Plaintiff waited for another twenty minutes until a tow truck arrived.   Id. at 26:16–21. Caban explained that they were towing his car because plaintiff was driving without a license. He then proceeded to uncuff plaintiff and issue him several tickets.   Id. at 27:1–10.   During the entire time, plaintiff's friend remained in the car.   Id. at 27:11–21.   The officers instructed plaintiff and his friend to take whatever they could from the car and go home.   Id. at 27:23–25.

2

Plaintiff requested his license back, but Caban denied ever having it.   Id. at 30:18–31:6.   The whole incident took approximately an hour and a half.   Id. at 30:12–15.

Plaintiff initiated a civil action against Officer Caban and the City in April 2015.[1]   His complaint alleged constitutional violations by both Caban and the City under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.   In addition, it set forth claims against just Officer Caban for assault, battery, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress.   On May 4, 2016, defendants moved for summary judgment.   Plaintiff filed a response on May 16, 2016, and a supplemental response on May 24, 2016.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c)(2).   A factual dispute is "material" only if it might affect the outcome of the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   For an issue to be "genuine," a reasonable fact-finder must be able to

---

[1]   Plaintiff also named several "John Doe" defendants.   "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified."   Blakeslee v. Clinton Cnty., 336 F. App'x 248, 250 (3d Cir. 2009).   "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed."   Id.   Federal Rule of Civil Procedure 21 provides: "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.   The court may also sever any claim against a party."   Fed. R. Civ. P. 21.   "It is appropriate, before proceeding to trial, to eliminate [the] fictitious defendants from [an] action under Fed. R. Civ. P. 21."   Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006).
    In the present case, plaintiff filed his complaint in April 2015, giving him well over a year to identify the John Doe defendants and amend the complaint to name them.   On June 27, 2016, I granted an extension of the deadlines for both discovery and dispositive motions.   Plaintiff is warned that failure to identify the true defendants by the close of discovery will result in the

return a verdict in favor of the non-moving party.   Id.   To establish "that a fact cannot be or is

genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c) (1).

On summary judgment, the moving party has the initial burden of identifying evidence

that it believes shows an absence of a genuine issue of material fact.   Conoshenti v. Pub. Serv.

Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).   It is not the court's role to weigh the

disputed evidence and decide which is more probative or to make credibility determinations.

Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998), citing Petruzzi's IGA

Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).   Rather, the court

must consider the evidence, and all reasonable inferences which may be drawn from it, in the

light most favorable to the non-moving party.   Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986), citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962);

Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact,

it need not "support its motion with affidavits or other similar materials negating the opponent's

claim."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   It can meet its burden by "pointing

---

dismissal of the John Doe defendants from this case.

out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at

325.   If the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden at trial,"

summary judgment is appropriate.   Celotex, 477 U.S. at 322.   The adverse party must raise

"more than a mere scintilla of evidence in its favor" and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions.   Williams v. Borough of W.

Chester, 891 F.2d 458, 460 (3d Cir. 1989).   The mere existence of some evidence in support of

the non-movant will not be adequate to support a denial of a motion for summary judgment;

there must be enough evidence to enable a jury to reasonably find for the non-movant on that

issue. Anderson, 477 U.S. at 249–50.

## DISCUSSION

## I.     Fourth Amendment Unlawful Seizure Claim

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment,

Ker v. Calif., 374 U.S. 23, 30 (1963), provides in pertinent part that the "right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated . . . ."   U.S. Const., amend. IV.   In order to establish a claim under the

Fourth Amendment, a plaintiff must show that the defendant's actions:   (1) constituted a

"search" or "seizure" within the meaning of the Fourth Amendment and (2) were "unreasonable"

in light of the surrounding circumstances.   Parker v. Wilson, No. 98-3531, 2000 WL 709484, at

*3 (E.D. Pa. May 30, 2000), citing Brower v. Cnty. of Inyo, 489 U.S. 593, 595 (1989).   A

seizure is a restraint of liberty by physical force or show of authority.   See Florida v. Bostick,

501 U.S. 429, 434 (1991).   It occurs "when a reasonable person in the position of the plaintiff

5

would not feel free to decline a request of a government agent or to terminate an encounter with a government agent."   Brown v. Commonwealth, No. 99-4901, 2000 WL 562743, *4 (E.D. Pa. May 8, 2000).

A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief."   Delaware v. Prouse, 440 U.S. 648, 653 (1979); see also Whren v. United States, 517 U.S. 806, 809–10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' . . . ."); United States v. Delfin–Colina, 464 F.3d 392, 396 (3d Cir. 2006).   "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."   Whren, 517 U.S. at 810 (analogizing an ordinary traffic stop to an investigative detention).   An investigatory traffic stop violates the Fourth Amendment if it "exceed[s] the time needed to handle the matter for which the stop was made," even if the stop is prolonged by only a few minutes.   Rodriguez v. U.S., ____ U.S. ____, 135 S. Ct. 1609, 1612 (2015) (rejecting notion that a "seven-or eight-minute delay" of a traffic stop to perform a dog sniff once a warning ticket had already been issued to the driver was permissible simply because it amounted to only a de minimis intrusion on the driver's Fourth Amendment rights).   Even a seizure "that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if its is prolonged beyond the time reasonably required to complete that mission."   Illinois v. Caballes, 543 U.S. 405, 407 (2005).

In support of their motion for summary judgment on this claim, defendants offer two arguments.   First, they contend that plaintiff's Fourth Amendment claim fails because there was

no "arrest" within meaning of the Fourth Amendment.   Plaintiff, however, does not allege false arrest, but rather an unreasonable search and seizure.   An "arrest" is not a required element of such a Fourth Amendment claim.   The Supreme Court has unequivocally stated that a routine traffic stop constitutes a "seizure" on which a Fourth Amendment claim may lie.   Whren, 517 U.S. at 810.

Second, defendants suggest that plaintiff's seizure was permissible under the Fourth Amendment because Officer Caban had probable cause to believe that a traffic violation occurred and did not exceed the permissible time period allowed when conducting the vehicle stop. Assuming for sake of this motion that probable cause existed for the stop,[2] the facts taken in the light most favorable to plaintiff do not establish defendants' entitlement to summary judgment on this claim.   Officer Caban stopped plaintiff for purportedly running two stop signs, but he detained plaintiff for approximately an hour and a half.[3]   In that time, Caban allegedly shoved plaintiff against the car and patted him down twice, took and lost his license, searched his wallet, made him wait for extended periods in his car while supposedly running identity searches, handcuffed plaintiff and held plaintiff in the back of the police car for an extended period. Officer Caban then uncuffed plaintiff, issued him tickets, towed his car and sent him home.

---

[2]   Defendants assert that regardless of whether plaintiff proceeds under a false arrest theory or an unlawful seizure theory, his Fourth Amendment claim must fail because the officers had probable cause to reasonably warrant the stop, as evidenced by plaintiff being found guilty of the traffic offenses.   Dkt. No. 16, at 6.   As noted above, however, the mere existence of probable cause does not end the Fourth Amendment inquiry.   A lawful traffic stop that thereafter exceeds the time needed to handle the matter for which the stop was made "violates the Constitution's shield against unreasonable seizures."   Rodriguez, 135 S. Ct. at 1612.

[3]   If the traffic stop itself was proper, Officer Caban had the authority to demand plaintiff's driver's license and registration and to order him out of the car.   Padilla v. Miller, 143 F. Supp. 2d 453, 467 (E.D. Pa. 1999).

Based on this evidence, a jury could find that even if plaintiff committed traffic violations and failed to produce his driver's license, the officers exceeded the time needed to handle the matter for which the stop was made, thereby rendering the traffic stop unreasonable for purposes of the Fourth Amendment.   Accordingly, I will deny defendants' motion for summary judgment on this claim.

## II.        Fourth Amendment Excessive Force Claim

Beyond its prohibition on unlawful seizures, the Fourth Amendment further precludes the use of unreasonably excessive force in the context of an arrest or investigatory stop.   Graham v. Connor, 490 U.S. 386, 394 (1989).   The Supreme Court has stated that the "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."   Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quotations omitted).   In making this determination, the court must evaluate the reasonableness of "a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while recognizing "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."   Graham, 490 U.S. at 396–97.   As the Supreme Court has held:

> [T]he "reasonableness" inquiry in an excessive force case is an objective one:   the question is whether the officer['s] actions are "objectively reasonable" in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation . . . .   An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 397 (internal citations omitted).

Careful attention must be given to the facts and circumstances of each particular case, recognizing that the use of some coercion necessarily inheres in the officer's right to make such an investigatory stop or seizure.   Id. at 396.   These facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   Id. The Court of Appeals enumerated additional factors for consideration, such as the possibility that the detainees are violent or dangerous, the duration of the action, whether the action occurs in the context of effecting an arrest, the possibility that the suspect is armed and the number of persons the officers must contend with at one time.   Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007).

Defendants argue that Officer Caban's action of pushing plaintiff against the car and causing him some chest and hip pain is not excessive force.   Further, they contend that the Court of Appeals has routinely held that an excessive force claim may not, as a matter of law, be predicated on the allegation that a plaintiff's handcuffs were too tight.   Dkt. No. 16, at 8, citing Giles v. Davis, 427 F.3d 197 (3d Cir. 2005) and Karkut v. Target Corp., 53 F. Supp. 2d 874 (E.D. Pa. 2006).

The record, however, permits an inference that Officer Caban's use of any force on Plaintiff was objectively unreasonable.   At all times during the stop, Caban never indicated any belief that plaintiff committed a crime or violation other than running stop signs and not having his license.   Caban did not suggest that plaintiff posed an immediate threat, was actively attempting to evade the stop, was not compliant with requests to get out of the car or was armed.

9

Moreover, Caban has not offered any explanation for why it was necessary to use handcuffs on plaintiff, let alone why he disregarded plaintiff's complaints that they were excessively tight. Indeed, contrary to defendants' argument, the Court of Appeals has explicitly held that the use of excessively tight handcuffs on an arrestee and the failure to respond to pleas to loosen them can constitute excessive force.[4]   Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004); see also Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003) (holding that a jury could find unreasonable force where defendant IRS agent handcuffed plaintiff and for 30 minutes refused to loosen her handcuffs); Fry v. Smoker, No. 11-3015, 2012 WL 1622656, at *7 (E.D. May 9, 2012) (declining to grant summary judgment on an excessive force claim where plaintiff suffered injury from tight handcuffing during a six- to seven-minute period even though he did not complain at the time). Plaintiff's testimony therefore creates a genuine issue of material fact as to whether Officer Caban used excessive force.

Finally, defendants suggest that plaintiff's lack of injury is fatal to his excessive force claim.   Again, this assertion is misplaced.   In Wilkins v. Gaddy, 559 U.S. 34 (2010), the Supreme Court held that the "'core judicial inquiry,'" for Eighth Amendment excessive force claims is "the nature of the force," not "the extent of the injury."   Id. at 39; see also Smith v. Mensinger, 293 F.3d 641, 648–49 (3d Cir. 2002) ("[T]he Eighth Amendment analysis must be

---

[4]   The Court of Appeals in Kopec emphasized that its opinion was not to be overread so as to not "open the floodgates to a torrent of handcuff claims."   Kopec, 361 F.3d at 777.   In the subsequent case of Gilles v. Davis, the Court of Appeals dismissed an excessive force claim based on tight handcuffing and distinguished Kopec because the plaintiff had neither indicated any discomfort to the officers nor suffered any injuries.   427 F.3d 197, 208 (3d Cir. 2005).   For purposes of summary judgment in this case, however, plaintiff's allegations sufficiently allege excessive force.   Unlike in Gilles, Plaintiff testified that he clearly reported his discomfort to Officer Caban.   Moreover, as in Kopec, Officer Caban faced "benign circumstances that hardly justified his failure to respond more promptly to [plaintiff's] entreaties, at least to the extent to

driven by the extent of the force and the circumstances in which it is applied; not by the resulting

injuries . . . . [D]e minimis injuries do not necessarily establish de minimis force.")).   "Although

Wilkins and Smith are Eighth Amendment excessive force cases, their reasoning is equally

applicable in the Fourth Amendment excessive force context since the Eighth Amendment

standard is more onerous."   Velius v. Twp. of Hamilton, 754 F. Supp. 2d 689, 693 (D.N.J.

2010).   While a jury may ultimately consider the absence of injury in evaluating the

reasonableness of the force, Smith, 293 F.3d at 649, the mere absence of a tangible injury does

not warrant summary judgment on this claim.

　　　　In short, I find that plaintiff has produced sufficient evidence on which a jury could rule

in his favor on the excessive force claim.   I will therefore deny defendants' motion for summary

judgment on this ground.

## III.   Qualified Immunity

　　　　Defendants also aver that the doctrine of qualified immunity protects Officer Caban from

excessive force liability.   They assert that no "persuasive precedent" would have "place[d]

Officer Caban on notice that a shove or a push or placing handcuffs on a detainee too tightly

obviously violated an individual's clearly established constitutional right to be free from

excessive force."   Dkt. No. 16, at 9.   I disagree.

　　　　Qualified immunity provides that government officials are immune from suits for civil

damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."

Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (quotations omitted).   This doctrine

---

ascertain if the handcuffs were too tight."   Kopec, 361 F.3d at 777.

attempts to balance the competing values of protecting innocent individuals from litigation while allowing the imposition of liability on those who abuse their discretion.   Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982).   The qualified immunity analysis is specific to each individual defendant and considers the totality of the circumstances at the time of the defendant's challenged conduct.   Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).

The qualified immunity inquiry is a question of law consisting of two prongs to be considered in any order.   Pearson v. Callahan, 555 U.S. 223, 236 (2009).   The first question is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."   Id. at 232 (internal citation omitted).   The second inquiry asks "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."   Id.   A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"   Reedy v. Evanson, 615 F.3d 197, 224 (3d Cir. 2010), quoting Saucier v. Katz, 533 U.S. 194, 202 (2001).   "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."   Pearson, 555 U.S. at 244 (internal quotation marks omitted).   The court must consider "the information within the officer's possession at that time."   Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 194 (3d Cir. 2005).

Under the first prong, plaintiff has set forth sufficient facts to raise a material question of fact with respect to whether Officer Caban violated his Fourth Amendment constitutional rights. With respect to the second prong, the right of an arrestee to be free from the use of excessive force in the course of his handcuffing is clearly established, and "a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth

Amendment." Kopec, 361 F.3d at 778; see also Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 631 (E.D. Pa. 2011) ("[T]he right to be free from the use of excessive force in the course of handcuffing is clearly established and is not defeated by qualified immunity.").   This principle is particularly true where, as here, the officer does not claim that plaintiff posed any threat, failed to comply with instructions, resisted arrest, committed a serious crime, appeared to be armed or attempted to flee.   I will therefore not grant summary judgment in favor of defendant Caban on the basis of qualified immunity.

**IV.**   ***Monell* Claim Against the City of Philadelphia**

Plaintiff's last claim asserts that the City of Philadelphia is liable for Officer Caban's constitutional violations due to its failure to train, supervise, investigate or discipline.   Under the well-established jurisprudence regarding municipal liability claims, I cannot find the claim meritless at this juncture of the litigation.

In the seminal case of Monell v. Department of Social Services., 436 U.S. 658 (1978), the Supreme Court confirmed that "Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."   Id. at 690–91 (emphasis in original).   To establish section 1983 liability on such a governing body, the plaintiff must identify either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."   Id.   A policy is shown when "a 'decisionmaker possessing final authority to establish municipal policy with respect to the action'

issues an official proclamation, policy, or edict."   Beck v. City of Pittsburgh, 89 F.3d 966, 971

(3d Cir. 1996), quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).   A

custom is defined as "'such practices of state officials so permanent and well-settled as to

constitute law,'" which can be established by showing the policy maker's knowledge and

acquiescence to the custom.   Id., quoting Andrews, 895 F.2d at 1480.   Alternatively, a custom

or policy may be established from a failure to train, supervise or otherwise act where that failure

reflects a deliberate indifference of officials to the rights of persons that come into contact with

these municipal employees.   City of Canton v. Harris, 489 U.S. 378, 388 (1989); Reitz v. Cnty.

of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).   As succinctly summarized by the Third Circuit,

three situations exist where acts of a government employee are deemed to be the result of a

policy or custom of the governmental employer, thereby rendering the entity liable under § 1983:

> The first is where the appropriate officer or entity promulgates a
> generally applicable statement of policy and the subsequent act
> complained of is simply an implementation of that policy. . . . The
> second occurs where no rule has been announced as policy but
> federal law has been violated by an act of the policymaker itself. . .
> Finally, a policy or custom may also exist where the policymaker
> has failed to act affirmatively at all, though the need to take some
> action to control the agents of the government is so obvious, and
> the inadequacy of existing practice so likely to result in the
> violation of constitutional rights, that the policymaker can
> reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation

marks and citations omitted).

Beyond identification of a policy or customary failure to act, establishment of section

1983 municipal liability requires a showing of causation.   "[I]t is not enough for a §1983

plaintiff merely to identify conduct properly attributable to the municipality."   Bd. of the Cnty.

14

<u>Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 404 (1997).   Rather, the plaintiff "must show

that the municipal action was taken with the requisite degree of culpability and must demonstrate

a direct causal link between the municipal action and the deprivation of federal rights."   <u>Id.</u>; <u>see</u>

<u>also</u> <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990) (plaintiff carries burden of

demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or

policy and the constitutional deprivation challenged).   The standard of causation is stringent and

requires that "the identified deficiency . . . be closely related to the ultimate injury."   <u>Canton</u>,

489 U.S. at 391.

With respect to plaintiff's <u>Monell</u> claim, defendants allege that plaintiff has failed to

identify an affirmative official municipal policy that caused the events and injuries here at issue.

This argument, however, misunderstands the basis of plaintiff's <u>Monell</u> claim.   Plaintiff

contends that the city of Philadelphia failed to train its officers in the proper use of force and

handcuffs, was deliberately indifferent to the impact of Officer Caban's actions and failed to

properly investigate and discipline his conduct.   According to Plaintiff, it is these failures and

not a particular police department policy that resulted in the alleged constitutional violations.

In support of his argument, Plaintiff has produced a report from criminal justice expert

Mark A. Jones who opines that the deposition testimony of both Officers Caban and Smith

reflects a lack of familiarity with and lack of training regarding proper police practices.   For

example, Officer Smith stated, " . . . if you are in our vehicle, it's our policy you must be

handcuffed, under arrest or not."   Dkt. No. 18, Expert Report of Mark Jones (Jones Report), at 3,

<u>quoting</u> Dep. of P/O Antonio Smith 1:14–18.   Smith also remarked that during routine car stops,

he puts people without identification in handcuffs "every single time."   Jones Report at 4,

quoting Smith Dep. 22–24, 28–29.   Similarly, Officer Caban testified that if a motorist is

impolite, "not nice," "irate" or does not have identification, he will handcuff him.   Jones Report

at 4, quoting Caban Dep. 26:5–8, 36:2–10, 37:8–11.   Jones asserts that these statements stand in

stark contrast to police directives which require use of the least amount of force necessary to

overcome resistance or protect life.   Id. at 3, 5.   He explains that "[t]he lack of knowledge and

training is exemplified by P/O Smith's statement that he has not reviewed the department's

directive for 3 ½ years" and that "his annual training does not go over directives."   Id. at 5,

quoting Smith Dep. 10:9–13.   Finally, Jones concludes that despite numerous instances of

misconduct by the police officers in this incident—including another incident where Officer

Caban was found to have violated department procedures by not returning another motorist's

wallet—defendants have produced no evidence of any discipline being administered against

them.   Id. at 6.

Standing alone, this report does not unequivocally establish a Monell claim.   Defendants,

however, have offered no response either to plaintiff's allegations of failure to train, supervise

and discipline or to the statements in the expert report.   Given the dearth of argument on the

subject, I cannot conclusively find the absence of a genuine issue of material fact as to the

validity of the Monell claim.   Nonetheless, I am cognizant that discovery continues in this case

and the parties will have until August 29, 2016 to file a renewed motion for summary judgment.

Therefore, I will deny summary judgment on the Monell claim at this time and reserve more

in-depth consideration of the issue until after the parties complete discovery.

**CONCLUSION**

In light of the foregoing, the Court will deny defendants' motion for summary judgment in its entirety.   An appropriate order follows.